UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TERREY S. HALLINAN,

                              Plaintiff,

                      v.                                          5:05-CV-576
                                                                                 (FJS/RFT)
MICHAEL J. ASTRUE,[1]
**Commissioner of Social Security,**

                              Defendant.
_____

**APPEARANCES**                                          **OF COUNSEL**

**AMDURSKY, PELKY, FENNEL**          **GREGORY R. GILBERT, ESQ.**
**& WALLEN, P.C.**
26 East Oneida Street
Oswego, New York 13126
Attorneys for Plaintiff

**OFFICE OF THE UNITED**              **WILLIAM H. PEASE, AUSA**
**STATES ATTORNEY**
100 South Clinton Street
P.O. Box 7198
Syracuse, New York 13261-7198
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

       Plaintiff filed an application for disability insurance benefits on July 30, 2003, alleging

---

[1] Plaintiff named Jo Anne B. Barnhart, the former Commissioner of Social Security, as Defendant in this action. On February 12, 2007, Michael J. Astrue took office as Social Security Commissioner. The Court, therefore, has substituted him as the named Defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure. No further action is required to effectuate this change. *See* 42 U.S.C. § 405(g).

that she became disabled on August 13, 2002.  *See* Administrative Transcript ("Tr.") at 47-50. Plaintiff's application was initially denied.  *See id.* at 33-36.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 16, 2004.  *See id.* at 37-38. On October 28, 2004, the ALJ issued a decision denying Plaintiff's application for disability benefits.  *See id.* at 14-25.  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on April 8, 2005.  *See id.* at 5-7.

On May 12, 2005, Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g) to review that final decision.  In support of her argument that the Court should reverse Defendant's decision and award her benefits, Plaintiff asserts that (1) the ALJ failed to fully develop the record in this case and that (2) the ALJ failed to consider the side effects of Plaintiff's medications on her ability to do work.  *See* Plaintiff's Brief at 5-10.  On the other hand, Defendant contends that there is substantial evidence in the record to support the ALJ's decision and that, therefore, the Court should dismiss Plaintiff's complaint.

## II. BACKGROUND

### A.      Procedural history

Plaintiff was forty-one years old at the time of the administrative hearing in 2004.  *See* Tr. at 18.  She completed high school and vocational training as a teacher's assistant.  *See id.* at 239. She has past relevant work experience as a classroom aide, cashier, and bus aide.  *See id.* at 241-43.  Plaintiff alleges disability due to neck pain, left shoulder pain, gastrointenstinal reflux disease, carpal tunnel syndrome, anemia, and depression.  *See id.* at 244.

**B.     Medical evidence in the record**

*1. Treating and examining physicians – physical*

The record contains treatment notes from Dr. Stephen Robinson at University Orthopedics & Sports Medicine, P.C., for the time period from May 1997 through August 1998. *See* Tr. at 197-203. During that time, Plaintiff complained about chronic neck pain. *See id.* Examinations found tenderness to palpation of the cervical spine, with some range of motion limitations of the neck. *See id.* at 200-03. X-rays of the cervical spine were within normal limits. *See id.* at 203. An MRI showed small central disc herniations at the C5-6 and C6-7 levels. *See id.* at 202.

Plaintiff saw Dr. Jonathan Braman, a neurologist, on March 13, 2002. *See* Tr. at 122-26. He noted that Plaintiff had undergone right carpal tunnel release surgery with good results. *See id.* at 122. Upon physical examination, Plaintiff had 5/5 muscle strength, but some give-way type of weakness of left elbow extension compared to the right. *See id.* Her gait was normal, reflexes and sensory perception were normal, and nerve studies were normal. *See id.* at 123. Dr. Braman noted an impression of moderate, chronic, and ongoing left C7 cervical radiculopathy. *See id.*

An MRI of Plaintiff's cervical spine was performed on May 20, 2002. *See id.* at 128. The results showed a paracentral disc herniation at the C6-7 level extending to the neural foramen. *See id.* On July 25, 2002, Dr. David Kolva, a neurologist, recommended a discectomy to treat Plaintiff's spinal condition. *See id.* at 138. On August 13, 2002, Dr. Jeffrey Winfield performed corpectomy spinal surgery to treat Plaintiff's loss of cervical lordosis, kyphosis, ventral spinal cord compression, and free fragment discs at the C6-C7 level which were compressing the spinal

cord and obliterating the neural foramen. *See id.* at 129. On September 11, 2002, Plaintiff followed up with Dr. David Kolva, who noted that she had "done extremely well in the interim since her surgery," with "no pain whatsoever [and] preoperative numbness and tingling . . . completely resolved." *See id.* at 133. Plaintiff had a good range of motion ("ROM") in the neck, normal sensorimotor examination of the upper and lower extremities, and normal reflexes. *See id.* She was referred to physical therapy for strengthening of the neck and extremities. *See id.*

Dr. Kalyani Ganesh performed a physical consultative examination on November 11, 2003. *See id.* at 159-62. At the examination, Plaintiff appeared in no acute distress, demonstrated a normal gait, could heel/toe walk and squat, and was able to change, get on and off the examination table, and rise from a chair without assistance. *See id.* at 160. She reported that her daily activities included cooking, cleaning, and doing laundry, all with help and resting, that she could shower three times a week and dress daily, and watch television. *See id.* Upon physical examination, she had intact hand and finger dexterity, full flexion of the cervical spine with no pain or spasm, full ROM of the extremities with full strength, full flexion of the thoracic and lumbar spine, and a negative straight leg raising ("SLR") test. *See id.* at 161. Dr. Ganesh noted no limitation in sitting, standing, walking, climbing, bending, or squatting, and mild limitation in lifting, carrying, pushing, and pulling. *See id.*

Dr. Michael Stephens completed a medical report on January 18, 2005. *See id.* at 230-33. He reported that he treated Plaintiff from approximately June of 2004 through January of 2005. *See id.* at 230. Dr. Stephens opined that Plaintiff had an unlimited ability to interact with supervisors, function independently, and maintain attention and concentration; a good ability to follow work rules, relate to coworkers, and deal with the public, and a fair ability to deal with

work stress. *See id.* at 231. He found that she had no limitations in following complex or detailed instructions and that she had a good ability to behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. *See id.* at 232.

### 2. *Examining psychologist – mental*

Dr. Kristen Barry, Ph.D., performed a consultative psychiatric examination on November 11, 2003. *See id.* at 163-66. Plaintiff reported that her mood was fairly stable with medications. *See id.* at 164. Dr. Barry observed that her speech was fluid and clear, thought processes were coherent and goal-directed, and she was able to engage in spontaneous conversation and did not appear overly anxious or depressed. *See id.* at 164-65. She was oriented to person, place, and time; her attention, concentration, and recent and remote memory were intact; her insight and judgment were fair to good; and her intellectual functioning was estimated to be in the average-to-low-average range. *See id.* at 165. Dr. Barry assessed Plaintiff as able to follow and understand simple instructions and maintain attention and concentration. *See id.* She was diagnosed with mild dysthymic disorder, and she was given a good prognosis. *See id.* at 166. Dr. Barry opined that Plaintiff was "doing fairly well from the psychological standpoint." *See id.*

### 3. *Non-examining physicians*

Two medical experts reviewed Plaintiff's records and completed Residual Functional Capacity ("RFC") assessments. The first, a physical RFC assessment, was completed on November 19, 2003, and found Plaintiff able to lift and carry fifty pounds occasionally and twenty-five pounds frequently; sit, stand, and/or walk for about six hours in an eight-hour

workday; and push and pull to the extent indicated by Plaintiff's lifting restrictions. *See* Tr. at 168. The physician noted slightly decreased range of motion in the cervical spine with cervical spine pain. *See id.* Plaintiff was found to have no postural, manipulative, visual, communicative, or environmental limitations. *See id.* at 169-70. Plaintiff reported that she was able to walk one to two blocks before needing to rest for five to ten minutes, that she was unable to stand for a long period of time, and that she had pain with lifting, computer work and driving. *See id.* at 171. The physician found Plaintiff's claimed limitations to be credible but not to the extent alleged. *See id.* Dr. Ganesh's report, in which he found that Plaintiff had no limitations in sitting, standing, walking, climbing, and squatting, and mild limitations in lifting, carrying, pushing, and pulling, was referenced and adopted as consistent with the medical evidence. *See id.*

A mental RFC assessment was completed on December 10, 2003. *See id.* at 173-76. This assessment found that Plaintiff was moderately limited in understanding and remembering detailed instructions, carrying out detailed instructions, performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances. *See id.* She was found to have no other significant limitations. *See id.* It was noted that Plaintiff had no history of psychiatric hospitalization or counseling. *See id.* at 175. Plaintiff was taking Lexapro and had taken Zoloft and Effexor in the past. *See id.* Her mental status examination was noted as being within normal limits. *See id.* Plaintiff's statements that she suffered from difficulty sleeping, frequent nighttime awakenings, and occasional anger and irritability were found to be credible but not to the extent alleged. *See id.* Dr. Barry's opinion of Plaintiff's capacities was adopted as consistent with the medical record. *See id.* Plaintiff was found to have the mental

RFC to perform her past relevant work as a cashier. *See id.*

A psychiatric review technique form was also completed and found that Plaintiff had mild restriction of activities of daily living, no difficulty in maintaining social functioning, moderate difficulty in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation of extended duration. *See id.* at 187.

### III. DISCUSSION

**A.    Disability determination**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . .

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the

> [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *See id.*

**B.      Scope of review**

In reviewing the Commissioner's final decision, a court must determine whether the Commissioner applied the correct legal standards and whether there is substantial evidence in the record as a whole to support the decision. *See Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)) (other citations omitted). A reviewing court, however, may not affirm an ALJ's decision if it reasonably doubts that the ALJ applied the proper legal standards, even if it appears that there is substantial evidence to support that decision. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient

specificity to allow a court to determine whether substantial evidence supports his decision. *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citation omitted). A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. *See* 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991) (citations omitted). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quotation omitted). "It is more than a mere scintilla or a touch of proof here and there in the record." *Id.*

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Id.* (citations omitted). "However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision." *Lewis v. Comm'r of Soc. Sec.*, No. 6:00 CV 1225, 2005 WL 1899399, *1 (N.D.N.Y. Aug. 2, 2005) (citations omitted).

In the present case, the ALJ found that (1) Plaintiff met the nondisability requirements for a period of disability and DIB set forth in Section 216(I) of the Social Security Act and was insured for benefits through the date of the decision; (2) Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability; (3) Plaintiff's status post cervical discectomy, cervical disc herniation and depression were considered "severe" under the regulations; (4) these impairments did not meet or medically equal one of the listed impairments

in Appendix 1, Subpart P, Regulations No. 4; (5) Plaintiff's allegations regarding her limitations were not fully credible; (6) Plaintiff retained the RFC to lift ten pounds frequently and twenty pounds occasionally; sit, stand, or walk for up to six hours in an eight hour workday; push and pull to the same extent as lifting and carrying; and a limitation to routine, repetitive work; (7) Plaintiff was unable to perform her past relevant work; (8) Plaintiff was a younger individual with a high school education and transferability of skills was not an issue in this case; (9) Plaintiff retained the RFC to perform a significant range of light work; (10) Plaintiff could perform other work existing in significant numbers in the national economy including assembly worker, small lock assembler, and tube operator; and (11) Plaintiff was not under a disability, as defined by the Social Security Act, at any time through the date of the decision. *See* Tr. at 24-25.

As noted, Plaintiff takes issue with a number of the ALJ's findings and his ultimate conclusion of non-disability. The Court will address each of Plaintiff's arguments in turn.

### *1. Development of the record on behalf of unrepresented Plaintiff*

Plaintiff argues that the ALJ failed to develop the record properly, especially considering the fact that Plaintiff was unrepresented at the hearing. *See* Plaintiff's Brief at 5-7. Plaintiff contends that the ALJ failed to question her properly regarding her limitations and failed to subpoena the records of her treating physicians properly. *See id.*

The Court has reviewed the hearing transcript and finds that the ALJ adequately elicited testimony from Plaintiff regarding her limitations. The ALJ asked Plaintiff specific questions regarding her ability to lift and carry objects and to sit, stand, and walk for periods of time, as well as her daily activities and the extent of her pain. *See* Tr. at 244-46. The ALJ also asked

-10-

Plaintiff whether there was anything else, not covered in the previous questioning, that she wanted to add to her testimony. *See id.* at 246-47. At that point, Plaintiff described some side effects of her medication, which testimony the ALJ considered in his decision. *See id.* at 19, 246-47. Thus, the ALJ's questioning gave Plaintiff the opportunity to paint a full picture of her limitations.

Plaintiff also claims that the ALJ failed to develop the record properly by failing to subpoena the records of Plaintiff's treating physicians. *See* Plaintiff's Brief at 5-7. The ALJ has a responsibility to "make every reasonable effort to help [a claimant] get medical reports from [her] own medical sources when [the claimant] give[s] [the Administration] permission to request the report." 20 C.F.R. § 404.1512(d). "Every reasonable effort" is defined as "an initial request for evidence from your medical source and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received . . . one follow up request to obtain the medical evidence necessary to make a determination." 20 C.F.R. § 404.1512(d)(1).

In this case, the record documents that the Administration attempted to contact Dr. Kolva, Plaintiff's treating physician, on October 6 and 20, 2003, and that Dr. Kolva's office responded on November 10, 2003. *See* Tr. at 95. This report did not outline specific functional limitations but instead repeatedly stated that Plaintiff had been referred to ongoing treatment by Dr. Winfield. *See* Tr. at 147-48. The Administration also contacted Dr. Winfield, and his treatment notes appear in the record. *See id.* at 129-41. Based on the evidence in the record, the Administration fulfilled its duty to make "every reasonable effort" to contact Plaintiff's treating physicians, and the records of these physicians are present in the record.

Plaintiff also seems to assert that her waiver of counsel at the hearing level was

-11-

ineffective. *See* Plaintiff's Brief at 5-6. The Court notes that, even if this argument were given weight, a "mere lack of waiver is not sufficient grounds for remand – the *pro se* plaintiff must show that the proceeding was unfair or his case was prejudiced due to lack of counsel." *Velez v. Barnhart*, No. 02 Civ. 10022, 2004 WL 1737839, *6 (S.D.N.Y. Aug. 3, 2004) (citation omitted). The Court finds that no unfairness or prejudice was present at the hearing level that would necessitate a remand in this case.

### 2. *Consideration of side effects*

Plaintiff argues that the ALJ failed properly to consider the side effects from her medications when reaching his decision. *See* Plaintiff's Brief at 8. Specifically, Plaintiff contends that the ALJ failed to allow her to explain the alleged side effects at the hearing and failed to incorporate a discussion of those side effects in his decision. *See id.* The regulations require that the ALJ consider the "type, dosage, effectiveness, and side effects of any medication a claimant takes or has taken to alleviate pain or other symptoms." 20 C.F.R. § 404.1529(c)(3)(iv).

The hearing transcript reflects that the ALJ gave Plaintiff the opportunity to explain her side effects and allowed her testimony to continue until it appeared that Plaintiff was finished with her explanation. *See* Tr. at 246-47. Plaintiff stated that she experiences anemia as a side effect of the medication Nexium and that her doctors were "in the process of getting it approved so [she could] have iron shots." *See id.* Plaintiff did not describe any other side effects, and her brief makes no mention of any additional side effects that she may have experienced. The ALJ's decision makes specific mention of the anemia, which the ALJ considered in his decision but

which he did not consider to be a "severe" impairment under the regulations. *See id.* at 19.

Plaintiff also points to documents that she provided at the hearing and incorporated in the administrative transcript, which Plaintiff appears to allege contained a full listing of her side effects. *See* Plaintiff's Brief at 8. These documents, however, merely list Plaintiff's medications and include generic information, in the form of patient information sheets, that list the *potential* side effects of the medications. *See* Tr. at 105-21. Plaintiff did not allege that she had actually experienced any of these side effects, and the medical records contain no documentation of their existence.

The record establishes that the ALJ allowed Plaintiff to explain the full extent of her side effects and that he took this information into consideration when reaching his decision. Thus, the Court finds that the ALJ properly considered Plaintiff's side effects.

### IV. CONCLUSION

After carefully reviewing the entire record in this case, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case.

**IT IS SO ORDERED.**

Dated: March 27, 2008
      Syracuse, New York

*[signature]*
Frederick J. Scullin, Jr.
Senior United States District Court Judge